IN THE SUPREME COURT OF THE STATE OF DELAWARE

DELAWARE CLAIMS PROCESSING, FACILITY, LLC; ARMSTRONG WORLD INDUSTRIES, INC. ASBESTOS PERSONAL INJURY SETTLEMENT TRUST; THE BABCOCK & WILCOX COMPANY ASBESTOS PI TRUST; CELOTEX ASBESTOS SETTLEMENT TRUST; FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST; THE FLINTKOTE ASBESTOS TRUST; OWENS CORNING FIBREBOARD ASBESTOS PERSONAL INJURY TRUST; OWENS-ILLINOIS ASBESTOS PERSONAL INJURY TRUST; PITTSBURGH CORNING CORPORATION ASBESTOS PERSONAL INJURY SETTLEMENT TRUST; UNITED STATES GYPSUM ASBESTOS PERSONAL INJURY SETTLEMENT TRUST; and WRG ASBESTOS PI TRUST,

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

No. 469, 2025

Court Below: Court of Chancery of the State of Delaware

C.A. No. 2025-0404

    Defendants Below, Appellants,

§
§
§
§

    v.

§
§
§

DBMP LLC; JOHNSON & JOHNSON; PECOS RIVER TALC, LLC; RED RIVER TALC, LLC; J-M MANUFACTURING CO., INC.; THE DOW CHEMICAL COMPANY; ROHM AND HAAS COMPANY; and UNION CARBIDE CORPORATION,

§
§
§
§
§
§
§
§
§

    Plaintiffs Below, Appellees.

§
§
§

Submitted: May 6, 2026
Decided: July 31, 2026

Before **SEITZ**, Chief Justice; **TRAYNOR**, **LEGROW, GRIFFITHS**, Justices, and **MUCH**, Judge,[1] constituting the Court *en banc*.

Upon appeal from the Court of Chancery of the State of Delaware. **REVERSED and REMANDED.**

Edwin J. Harron, Esquire (*argued*), Kevin A. Guerke, Esquire, Lauren Dunkle Fortunato, Esquire, Renae P. Pagano, Esquire, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware, *for Defendant Below/Appellant Delaware Claims Processing Facility, LLC*.

K. Tyler O'Connell, Esquire (*argued*), Kirsten A. Zeberkiewicz, Esquire, Barnaby Grzaslewicz, Esquire, Alena V. Smith, Esquire, Samuel E. Bashman, Esquire, MORRIS JAMES LLP, Wilmington, Delaware, *for Defendants Below/Appellants Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust; The Babcock & Wilcox Company Asbestos PI Trust; Celotex Asbestos Settlement Trust; Federal-Mogul Asbestos Personal Injury Trust; The Flintkote Asbestos Trust; Owens Corning Fibreboard Asbestos Personal Injury Trust; Owens-Illinois Asbestos Personal Injury Trust; Pittsburgh Corning Corporation Asbestos Personal Injury Settlement Trust; United States Gypsum Asbestos Personal Injury Settlement Trust; and WRG Asbestos PI Trust*.

Kelly E. Farnan, Esquire, Blake Rohrbacher, Esquire, Christine D. Haynes, Esquire, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware, *for Plaintiffs Below/Appellees*.

Gregory M. Gordon, Esquire, Daniel B. Prieto, Esquire, JONES DAY, Dallas, Texas; Morgan R. Hirst, Esquire, JONES DAY, Chicago, Illinois; C. Kevin Marshall, Esquire, (*argued*), David S. Torborg, Esquire, David Wreesman, Esquire, JONES DAY, Washington, D.C., *for Plaintiffs-Below/Appellees DBMP LLC; Johnson & Johnson; Pecos River Talc, LLC; and Red River Talc, LLC*.

---

[1] Sitting by designation under Del. Const. art. IV, § 12 and Supreme Court Rules 2(a) and 4(a) to complete the quorum.

Allison M. Brown, Esquire, Kristen R. Fournier, Esquire, KIRKLAND & ELLIS LLP, New York, New York, *for Plaintiffs Below/Appellees Johnson & Johnson; Pecos River Talc, LLC; Red River Talc, LLC; The Dow Chemical Company; and Union Carbide Corporation*.

John C. Phillips, Jr., Esquire, PHILLIPS, MCLAUGHLIN & HALL, P.A., Wilmington, Delaware for *Amici Curia*e.

**TRAYNOR**, Justice:

In this interlocutory appeal, we consider whether the Court of Chancery erred by invoking *sua sponte* a centuries-old discovery mechanism: the equitable bill of discovery. Courts of equity used this mechanism to facilitate discovery between parties before the adoption of formal discovery rules. The court invoked the mechanism here in a declaratory-relief action in which a group of asbestos manufacturers sought a declaration that numerous settlement trusts and their data-processing facility were required to retain information to which the manufacturers had no present right to obtain. By that, we mean that the information was not the subject of a pending subpoena or discoverable in a specifically identified pending or anticipated lawsuit.

The settlement trusts and the data-processing facility moved to dismiss the manufacturers' complaint based on, among other grounds, their failure to state a claim upon which relief can be granted. Although the manufacturers did not explicitly request an equitable bill of discovery, the Court of Chancery found that they had adequately pleaded one and denied the settlement trusts' motion.

Recognizing that "this case presents sufficiently novel issues of law and a sufficiently specific set of alleged facts that an early assessment from the justices

4

would be optimal,"[2] the Court of Chancery recommended that we accept an interlocutory appeal from its decision. We have done so and, as explained more fully below, even accepting the current viability of an action for an equitable bill of discovery, we conclude that the manufacturers' complaint failed to plead all the required elements of their claim. Thus, we reverse.

I

Our discussion of the factual background is drawn from the well pleaded allegations in the manufacturers' Verified First Amended Complaint for Declaratory and Injunctive Relief.

A

The plaintiffs are asbestos manufacturers[3] (collectively, the "Manufacturers") and, as such, are regularly named as defendants in asbestos litigation. When an asbestos plaintiff files a claim alleging harm caused by asbestos exposure at the hands of a manufacturer, one strategy the manufacturers will typically pursue is to identify other potential sources of asbestos exposure that contributed to the plaintiff's injuries. Identifying other sources of exposure affects the value of the plaintiff's claim as the Manufacturers explain in their complaint:

---

[2] Order, *DBMP LLC v. Delaware Claims Processing Facility, LLC*, No. 2025-0404 (Del. Ch. Nov. 14, 2025), D.I. 73.
[3] DBMP LLC; Johnson & Johnson; Pecos River Talc, LLC; Red River Talc, LLC; J-M Manufacturing Co., Inc.; The Dow Chemical Company; Rohm and Haas Company; and Union Carbide Corporation.

The extent to which claimants have been exposed to alternative sources of asbestos is critical in determining the value of a claim against a particular defendant. A claim with few alternative exposures typically has a higher value than a claim with multiple alternative exposures. The extent to which a plaintiff has recovered from other defendants or asbestos trusts also typically reduces the amount that plaintiff can recover from a particular defendant . . . .[4]

But this strategy can be challenging. As we recognized in *Droz v. Hennessy Industries, LLC*,

[a]sbestos exposure cases are beset with evidentiary challenges. The latency period before disease onset is lengthy. Memories fade about the circumstances of exposure. The plaintiff often passes away before litigation is concluded. These challenges are particularly acute when it comes to product identification—proving that the plaintiff was exposed to an asbestos-containing product manufactured by a specific defendant.[5]

The Manufacturers thus look to sources of information other than the asbestos plaintiff and his or her counsel to identify other asbestos exposures that may have contributed to the plaintiff's injuries. One such source is asbestos settlement trusts.

B

Asbestos settlement trusts were created when mass litigation forced numerous asbestos manufacturers and users into bankruptcy. The concept traces its origin to the bankruptcy plan of the formerly prominent asbestos manufacturer, Johns-Manville Corporation.

---

[4] App. to Opening Br. at A16 (Compl. ¶ 8).
[5] *Droz v. Hennessy Indus., LLC*, 275 A.3d 257, 261 (Del. 2022).

6

In the 1980s, after finding itself named as a defendant in virtually every asbestos-related lawsuit, Johns-Manville filed for bankruptcy. Its reorganization plan was designed to ensure that (i) the reorganized company could continue its business operations and (ii) asbestos plaintiffs could receive compensation for the harm they suffered.

The reorganization plan included the creation of a settlement trust, which was funded to provide compensation for claims brought against Johns-Manville. The bankruptcy court also issued a channeling injunction requiring claims against the underlying bankrupt asbestos manufacturer to be submitted to the trust. Asbestos plaintiffs in consequence could not sue Johns-Manville in court.

After Congress amended the bankruptcy code in 1994[6] to expressly authorize debtors facing substantial asbestos-related liabilities to establish settlement trusts and to obtain channeling injunctions like Johns-Manville's model, several bankrupt asbestos manufacturers followed that model. Under the Johns-Manville model, a claimant seeking compensation from a settlement trust for asbestos-related injuries must file a claim with the trust through a detailed application, containing

> a medical diagnosis of an asbestos-related disease; supporting medical records; documentation of the individual's exposure to asbestos

---

[6] Bankruptcy Reform Act of 1994, Pub. L. No. 103–394, 108 Stat. 4106 (1994) (codified as amended at 11 U.S.C. § 524).

(including work history, job site records, and witness statements); and proof of product use.[7]

The individual's information, along with the documents generated in reviewing the application, is referred to in the Manufacturers' complaint as "Claims Data."

Asbestos-exposure information provided by a claimant and encompassed within a claimant's Claims Data comes into play when a claimant sues solvent asbestos manufacturers like the Manufacturers. According to the Manufacturers, "[d]isclosure of various categories of information contained within the Claims Data now is a standard part of a [tort claimant's] disclosure obligations under case management and discovery orders in consolidated asbestos dockets across the United States."[8]

C

Ten of the eleven defendants[9] in this case are settlement trusts, and the eleventh is the Delaware Claims Processing Facility, LLC, an entity retained by the trusts to facilitate claim processing (collectively, the "Trusts"). By January 2025, the Trusts adopted data policies ("Data Policies")—which, in the Trusts' telling—

---

[7] App. to Opening Br. at A30 (Compl. ¶ 50).
[8] *Id.* at A32–33 (Compl. ¶ 55) (footnote omitted).
[9] Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust; The Babcock & Wilcox Company Asbestos PI Trust; Celotex Asbestos Settlement Trust; Federal-Mogul Asbestos Personal Injury Trust; The Flintkote Asbestos Trust; Owens Corning Fibreboard Asbestos Personal Injury Trust; Owens-Illinois Asbestos Personal Injury Trust; Pittsburgh Corning Corporation Asbestos Personal Injury Settlement Trust; United States Gypsum Asbestos Personal Injury Settlement Trust; and WRG Asbestos PI Trust.

bring them into compliance with various data protection laws. These data protection laws place limits on the personal data an organization may obtain and retain. The Data Policies implemented the limits by requiring the destruction of Claims Data after a specified time.

The Trusts notified past claimants of this development, stating that they were

> [b]eginning the process of destroying data and documents submitted to the Trust[s] by claimants whose claims have been: (1) issued a payment, (2) withdrawn by counsel, or (3) deemed withdrawn by the Trust (collectively, 'Resolved Claims').[10]

According to the notices, the Trusts' Data Policies were being implemented "to enhance the protection of [the claimants'] personal and sensitive information."[11] The Manufacturers learned about the Data Policies and determined that, if the policies are implemented, they will lose their ability to obtain the Claims Data for the purpose of defending against asbestos lawsuits.

The Manufacturers look askance at the Trusts' profession of their intent in adopting the Data Policies, contending that the policies "were specifically designed to evade the [Trusts'] obligation to produce highly relevant information in current and future legal proceedings . . . and to otherwise compromise the ability of asbestos defendants to defend current and future asbestos-related claims."[12] Additionally, the

---

[10] App. to Opening Br. at A39 (Compl. ¶ 68).
[11] *Id.* at A60–79 (Compl. Exs. A, B, L, M, N, O, P, Q, R, S).
[12] *Id.* at A15–16 (Compl. ¶ 7).

Manufacturers allege that the Claims Data contains information protected by trust transparency laws, which were enacted in response to concerns about suppression of evidence in asbestos litigation and to provide solvent asbestos manufacturers with the right to seek discovery against asbestos trusts. They allege further that they hold indirect claims against the Trusts ("claims . . . for reimbursement, indemnification, subrogation and/or contribution"),[13] without identifying the nature of the claims or the trust claimants whose trust claims are implicated.

D

The Manufacturers sued the Trusts in the Court of Chancery seeking a declaration that the Trusts had a duty to preserve the Claims Data. The Manufacturers also requested an injunction that would require the Trusts to retain the data.

By stipulation, eventually entered by the court as an order, the Trusts agreed that the policies would not take effect while the litigation was pending. The Trusts then moved to dismiss the complaint,[14] arguing that (i) the Court of Chancery lacked subject matter jurisdiction over the action because, among other things, injunctive relief was no longer required, (ii) the Manufacturers lacked standing to bring the

---

[13] *Id.* at A13–14 (Compl. ¶ 4).

[14] The settlement trust defendants first moved to dismiss. Delaware Claims Processing Facility filed its own motion to dismiss but joined in the arguments made by the settlement trust defendants. For the sake of clarity, and because the substance of the motions is identical, we refer to the motions as a single motion.

lawsuit, and (iii) the Manufacturers failed to state a claim upon which relief can be granted.

The Court of Chancery, after full briefing and oral argument on the Trusts' motion, requested supplemental briefing on the applicability of a "traditional equitable device"—later identified as the equitable bill of discovery—used to "preserv[e] discovery that otherwise could be lost."[15] This request was prompted by the court's "nagging feeling . . . that there was a historical analog to the pending action" and its resulting independent research.[16] Before that, the Manufacturers had not invoked the Court of Chancery's jurisdiction to secure an equitable bill of discovery. After the parties submitted their supplemental briefs, the court issued its ruling on the Trusts' motion to dismiss.

The court denied the motion, making relatively short work of the Trusts' jurisdictional and standing arguments. Its focus, instead, was on the Manufacturers' entitlement to an equitable bill of discovery. Though, as noted, the "bill" was not mentioned in the Manufacturers' complaint, the court concluded that the complaint alleged facts sufficient to state a claim for one. The court did not explicitly address the adequacy of the pleadings as to the Manufacturers' request for declaratory relief.

---

[15] Letter, *DBMP LLC v. Delaware Claims Processing Facility, LLC*, No. 2025-0404 (Del. Ch. July 24, 2025), D.I. 57.
[16] *Id.*

11

E

The Trusts applied for certification of an interlocutory appeal. The Court of Chancery granted the application, and we accepted the appeal. The Trusts now lead with an attack on the Manufacturers' standing. As to the merits, the Trusts argue that the Court of Chancery erred not only by *sua sponte* raising the specter of an equitable-bill-of-discovery claim but also by concluding that the complaint adequately pleaded such a claim. From an alternative angle, the Trusts assert that the Manufacturers waived the equitable-bill-of-discovery claim, and the Court of Chancery erred by entertaining it.

The Manufacturers contest each of those arguments and raise an issue of their own—that is, that this Court can affirm the decision below by determining that the declaratory-judgment claim was adequately pleaded.

II

We review the Court of Chancery's denial of the Trusts' motion to dismiss *de novo*.[17] Our review of the adequacy of the pleading of a claim proceeds in accordance with a well-settled standard:

> [A]ll well-pleaded factual allegations are accepted as true; . . . even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; . . . the Court must draw all reasonable inferences in favor of the non-moving party; and . . . dismissal is inappropriate

---

[17] *Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1262 (Del. 2021) (citing *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 70 (Del. 1995)).

12

unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[18]

III

The Trusts challenge the Manufacturers' standing, arguing that the Manufacturers did not plead a case or controversy. Because we reverse the Court of Chancery on other grounds, we need not determine whether the Manufacturers have standing; their "standing will not affect the outcome of the appeal[.]"[19] We therefore "bypass standing and proceed to the merits."[20]

As mentioned above, the Court of Chancery invoked *sua sponte* the equitable bill of discovery and held that the complaint sufficiently pleaded a claim for the bill. According to the Trusts, the Court of Chancery erroneously conceived that a bill of discovery could support a permanent, unlimited document preservation order directed to a third-party—that is, an entity not otherwise in litigation in this state or subject to a pending subpoena. The Trusts contend that there is no legal or equitable precedent that would justify the imposition of "a permanent, unlimited document preservation order against [them]."[21] Preservation orders, they note, are typically issued by a court that is managing discovery relevant to the claims and defenses before it.

---

[18] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).
[19] *Town of Fenwick Island v. State*, --- A.3d ---, 2026 WL 1468816, at *3 (Del. May 26, 2026).
[20] *Id.* (citing *McKenna v. Singer*, 2017 WL 3500241, at *15 n.218 (Del. Ch. July 31, 2017)).
[21] Opening Br. at 22.

The Trusts argue further that, in any event, the Manufacturers did not plead a cognizable claim for an equitable bill of discovery. To find otherwise, the Trusts insist, would bless the creation of a new cause of action for an order mandating broad document and data preservation divorced from a request for targeted discovery in a specific case. And consistently with their position in the Court of Chancery, the Trusts contend that, because the Manufacturers did not expressly request a bill of discovery in their complaint, that request was waived.

We agree that the complaint does not contain a sufficiently pleaded claim for an equitable bill of discovery. Our explanation of this conclusion follows.

A

In *Curran v. Craven*, Chancellor Seitz, in response to the petitioner's invocation of "the historic jurisdiction of equity courts to grant bills of discovery to procure evidence for use in other courts[,]" observed that such jurisdiction was "too well settled to be disputed."[22] It is equally indisputable that the Court of Chancery's jurisdiction to grant an equitable bill of discovery to facilitate discovery in actions at law has rarely—if ever—been invoked in the 70 years since *Curran v. Craven* was decided.[23] This, we surmise, explains why the plaintiffs here did not ask for an equitable bill of discovery in their complaint. We suppose further that the need to

---

[22] 125 A.2d 375, 376–77 (Del. Ch. 1956).

[23] The parties have not cited, nor has the Court uncovered, any post-*Curran* Delaware opinions mentioning an equitable bill of discovery.

resort to this unusual discovery tool has been largely obviated by modern discovery rules. At any rate, the infrequency of its use has left us with a relative dearth of caselaw to consult as we attempt to discern the conditions under which a claim for an equitable bill of discovery will lie. Fortunately, however, two venerable treatises on equity and a handful of cases from other jurisdictions provide a helpful guide.

i

The equitable bill of discovery functioned as a discovery mechanism before the promulgation of the formal rules of discovery. Justice Story, in his *Commentaries on Equity Jurisprudence*, identified the probable origin of equitable-bill-of-discovery proceedings in modern courts of equity as residing in actions cognizable under Roman law. [24] One such action, *actiones ad exhibendum*, related to the production of things, or deeds or documents in which another person had an interest.[25] Another, *actiones interrogatoriæ*, were bills that requested another party to answer under oath to interrogatories.[26] Justice Story observed that, by the time of Justinian, interrogatories were propounded only in cases in litigation.[27] Regardless of the form of discovery a party sought, Roman law required that the requesting

---

[24] 2 Joseph Story, *Commentaries on Equity Jurisprudence*, § 1487 (Melville M. Bigelow ed., 13th ed. 1886).
[25] *Id.*
[26] *Id.*
[27] *Id.*

party have legal capacity and that the discovery "should respect some right of action."[28]

Bills of discovery in our courts of equity, Justice Story wrote, "are greatly favored in equity, and will be sustained in all cases where some well-founded objection does not exist against the exercise of the jurisdiction."[29]  Although "every bill in equity may properly be deemed a bill of discovery," Justice Story clarified that in equity

> a bill of discovery is a bill which asks no relief, but which simply seeks the discovery of facts resting on the knowledge of the defendant, or the discovery of deeds, or writings, or other things in possession or power of the defendant, in order to maintain the right or title of the party asking it in some suit or proceeding in another court.[30]

He added that "in general it seems necessary, in order to maintain a bill of discovery, that an action should be already commenced in another court to which it should be auxiliary"; but there are rare exceptions—for example, when the object of discovery is to ascertain the proper party to sue.[31]

---

[28] *Id.*
[29] *Id.* at § 1488.
[30] *Id.* at § 1483.
[31] *Id.*

Although the treatise does not expressly set forth the elements of an equitable bill of discovery, key features of a bill emerge, features that seem to have guided the Court of Chancery in its formulation of the elements of the claim.

One feature is that the petition for a bill must clearly demonstrate that the party seeking discovery has an interest in the discovery.[32] Additionally, the petition must seek discovery that is material to a specifically identifiable anticipated or pending action. Such discovery is material when it supports "a good ground of action" for a plaintiff or "a good ground of defense" for a defendant.[33] A bill of discovery will not be granted, however, if a court of law can compel discovery.[34] Put another way, legal relief must be inadequate.[35]

John Norton Pomeroy, in his treatise on equity jurisprudence, concurs with Justice Story in his conception of the equitable bill of discovery. For Pomeroy, the party seeking the bill must have "a right to maintain or defend an action in another court"; that specific cause of action must be "pending or imminent."[36]

---

[32] *Id.* at § 1490.
[33] *Id.* at § 1493a.
[34] *Id.* at § 1495 n.1 ("If a Court of Law can compel the discovery, a Court of Equity will not interfere.").
[35] *Id.*; *see also* 1 John Norton Pomeroy, *A Treatise on Equity Jurisprudence* § 197a (Spencer W. Symons ed., 5th ed. 1941) ("It is a general rule that equity will not interfere in aid of proceedings, otherwise suitable to be aided, in other courts, which by their constitution or established modes of procedure, are themselves able to give their suitors the needed relief by compelling disclosure of facts or the production of documents.") [hereinafter Pomeroy].
[36] Pomeroy at § 197b.

Two decisions from the High Court of Chancery of Great Britain—both cited in Justice Story's treatise—provide helpful illustrations of petitions seeking a bill of discovery, both of which identified a close connection between the bill requested and an imminent cause of action.

In the 1785 case, *Moodalay v. Morton*,[37] the High Court of Chancery declined to dismiss a petition for an equitable bill of discovery. There, the petitioners claimed to have been dispossessed of their right to tobacco supply by members of the respondent company. Because the petitioners did not possess sufficient information to bring a cause of action to vindicate their right, they pleaded a claim for a bill of discovery to determine whether the proper defendants were servants acting under the authority of the respondent company. The court denied the respondent's motion to dismiss, accepting the petitioners' argument that a bill of discovery need not be connected to an existing action at law; rather "[i]t is sufficient that a foundation for an action has been laid, by the plaintiffs being dispossessed by the Company's servants."[38]

---

[37] (1785) 28 Eng. Rep. 1245 (Ch.).
[38] *Id.*

In 1822, the High Court of Chancery, in *Angell v. Angell*,[39] long ago hailed by our Court of Chancery as a "leading authorit[y],"[40] considered the adequacy of a bill of discovery seeking to perpetuate testimony by way of written depositions. The plaintiff sought to preserve the testimony for use in an anticipated action at law in which he would seek to prove that he was a rightful heir of an estate. The plaintiff's bill stated that (i) "in such action it would be necessary for him to prove, amongst other things, the several facts before mentioned relating to his descent"; and (ii) "the same could be proved by divers other persons now resident in America, and out of the jurisdiction of the Court, but that such persons were very aged, and likely to die before the Plaintiff could bring his action to trial, and that he would lose the benefit of their testimony at such trial, unless their evidence was perpetuated in this Court."[41] The plaintiff did not, however, allege "that the matter could not be made the subject of an immediate action."[42]

The *Angell* court acknowledged that there were circumstances where "a bill must necessarily precede" the action at law for which the evidence is to be preserved, such as when its purpose is to "ascertain[] facts upon which it must depend against whom the action is to be brought[.]"[43] But under the facts alleged, the plaintiff did

---

[39] (1822) 57 Eng. Rep. 33 (Ch.).
[40] *Hall v. Stout*, 4 Del. Ch. 269, 273 (Del. Ch. 1871).
[41] *Angell*, 57 Eng. Rep. at 34.
[42] *Id.* at 35.
[43] *Id.* at 36.

not need the evidence to file his action at law. The want of a pending action under such circumstances was fatal to the plaintiff's bill, and the respondent's demurrer was allowed. We read *Angell* as standing for the proposition that, when a petitioner for an equitable bill of discovery can plead sufficient facts in an anticipated action at law, an equitable bill of discovery is not available to secure evidence that would be discoverable in the anticipated action.[44]

Two other cases, both postdating the modern rules of discovery and cited by the Court of Chancery as examples of a bill of discovery supporting a preservation order, warrant discussion. As will be seen, both cases—like *Moodalay* and *Angell*—involved a bill of discovery that was connected to a specifically identified matter.

In *Johnson v. Spartanburg County School District 7*, the South Carolina Court of Appeals reviewed a trial court's decision temporarily enjoining a school district from failing to maintain evidence related to an alleged sexual assault on a school bus.[45] The court also considered whether the trial court erred by permitting the plaintiff to conduct discovery under her claim for an equitable bill of discovery pending a hearing on the merits of the case.

Relevant to our purposes, the plaintiff requested that

---

[44] *See also Hall*, 4 Del. Ch. at 272 (holding that a party who was unable to "bring [his] title to a trial at law under immediate judicial investigation" was entitled to a bill to perpetuate testimony.).
[45] 2008 WL 9846826, at *2 (S.C. Ct. App. Oct. 27, 2008).

the School District . . . maintain, preserve, and produce certain items and information relating to the incident and to refrain from moving, removing, or modifying any such items and information.[46]

The plaintiff requested this information for the purposes of determining "whether any potential civil causes of action existed, identify[ing] all potential defendants, and potentially proceed[ing] with any civil matters related to the incident."[47]

The court of appeals affirmed in part and reversed in part the trial court's decision. It first held that the trial court did not abuse its discretion in concluding that the plaintiff would (1) likely succeed on the merits of her claim for a bill of discovery and (2) suffer "immediate and irreparable injury by not being able to examine the evidence or pursue a valid civil action, leaving her with no legal remedy."[48] The court of appeals, however, held that the trial court erred by allowing the plaintiff to proceed with discovery; for the court, that decision constituted a premature ruling on the merits of the plaintiff's equitable-bill-of-discovery claim.

The second case, *Lewis v. Weaver*,[49] concerned a petitioner's claim for a bill of discovery that requested a preservation order and permission to conduct pre-suit discovery. The petitioner in *Lewis* requested a bill of discovery relating to injuries that his father suffered after falling from a dock. In particular, the petitioner sought an order requiring the owner of the dock to "preserve[] the dock in its present

---

[46] *Id.* at *1.
[47] *Id.*
[48] *Id.* at *2.
[49] 969 So.2d 586 (Fla. Dist. Ct. App. 2007).

21

condition long enough for an order allowing him or his agents to enter upon the property to inspect, photograph and test the dock before it can be repaired and changed."[50] A failure to preserve the dock, the petitioner contended, would "seriously impair" his ability to sue for damages.[51] The trial court agreed, allowing the petitioner's experts to inspect and test the dock in addition to permitting access to municipal and county records relating to the dock. The dock owner sought certiorari review.

The appellate court denied certiorari and left the trial court's order in place, explaining that

> [u]nder the current state of [Florida] law, a pure bill of discovery should be granted if there is some reasonable basis to believe that discovery in a later damages action would be inadequate or too late to vindicate the litigant's right to evidence.[52]

The court noted that the victim was "so incapacitated from the incident" that he could not assist in determining the appropriate defendant to sue.[53] For the court, "[p]reservation and inspection of the dock in its current condition [was] essential to identifying a factual basis for suit against specific defendant(s)."[54] So, in the appellate court's view, the trial court did not err.

---

[50] *Id.* at 586.
[51] *Id.* at 587.
[52] *Id.*
[53] *Id.* at 587–88.
[54] *Id.* at 588.

The *Lewis* court, like the South Carolina Court of Appeals in *Johnson*, concluded that the bill of discovery could support a preservation order. In both cases, however, the courts entertained the request for a bill to preserve evidence relevant to a specifically identified matter.

B

From the treatises and opinions discussed above, we discern that an equitable-bill-of-discovery claim consists of three elements: (i) that the requesting party has an interest in the discovery, (ii) that the discovery sought is material to a specific pending or anticipated claim, and (iii) that a court of law cannot compel the discovery—that is, there is no adequate remedy at law.[55] Here, it is uncontested that, when one of the Manufacturers is sued for asbestos-related injuries, it has an interest in obtaining Claims Data relevant to the plaintiff's claims. And we do not disturb the Court of Chancery's inference that, at least in some cases, the Manufacturers, when sued, will encounter difficulties in securing the information encompassed in the Claims Data from the plaintiff or his counsel even though they were the original source of the information. But we part with the Court of

---

[55] This enumeration of the elements does not differ radically from the Court of Chancery's formulation of the claim's elements. One variation is our qualification that pending and anticipated claims must be specifically identified in the complaint or petition. We also point out that, because our decision rests on other grounds, we offer no opinion on the court's suggestion that a petitioner is without an adequate legal remedy when the evidence sought cannot be obtained "conveniently . . . through other means." *DBMP LLC v. Delaware Claims Processing Facility, LLC*, 349 A.3d 663, 689, 690 (Del. Ch. 2025).

23

Chancery's conclusion that the Manufacturers adequately pleaded the existence of a pending or anticipated claim.

Because the Manufacturers must concede that their complaint does not identify a specific pending or anticipated claim, they assert that it is unnecessary to do so. For them, it is sufficient that they allege that they "are defendants in numerous asbestos-related personal injury tort cases around the country and a debtor in a bankruptcy proceeding who are seeking to resolve current and future asbestos liabilities through section 524(g) of the Bankruptcy Code, 11 U.S.C. § 524(g)."[56] The Manufacturers allege even more generally that the Claims Data "is highly relevant to tens of thousands of known asbestos-related personal injury claims and other legal proceedings across the country."[57] Based on these and other allegations relating to the prevalence of asbestos-related litigation, the Court of Chancery was satisfied that the complaint adequately pleaded the existence of a pending or anticipated action. Implicit in the court's conclusion was that it is unnecessary for an equitable-bill-of-discovery petition to identify a specific pending or anticipated

---

[56] App. to Opening Br. at A14 (Compl. ¶5).

[57] *Id.* at A12 (Compl. ¶ 1); *see also id.* at A45 (Compl. ¶ 80) ("As defendants in thousands of asbestos-related personal injury cases, or as a debtor in asbestos-related bankruptcy proceedings, Plaintiffs have fundamental rights . . . to obtain information pertinent to their defenses and positions in those proceedings.").

24

claim to which the evidence to be preserved is material. This, in our view, unduly relaxes the standard for determining the availability of this exceptional remedy.

As discussed above, the treatises and most relevant cases support the view that the identification of a specific pending or anticipated claim should be required. Of course, one might plausibly argue that the reason the treatises and the caselaw appear to limit equitable bills of discovery in this fashion is because that has been the context in which the bill has typically been sought. Why not, the question follows, nevertheless allow for the granting of a bill of discovery for unspecified pending and anticipated claims? The reason, in our view, is a practical one and is, in part, illustrated by this case. The absence of an identifiable pending or anticipated action at law leaves the court with no gauge with which to measure the appropriate scope of the bill. Rather than order the preservation or production of specific discoverable evidence, the bill issued in connection with an unspecified claim will—almost of necessity—be broader in scope than would be permissible in the action at law for which the evidence is to be preserved or produced. Such has been the case here where the Court of Chancery has been asked to order the preservation of the Claims Data from hundreds of thousands of trust claimants' files spanning multiple decades based on unspecified pending claims and a threat of an as yet unknown number of future claims.

We agree with the Court of Chancery's observation that "[e]quity 'has an expansive power[] to meet new exigencies[.]'"[58] Yet that power is not without bounds. And extending the availability of an equitable bill of discovery to petitions that do not identify a specific claim, pending or anticipated, in our view, exceeds those bounds. Accordingly, by not identifying a specific claim and the discovery to which the Manufacturers were entitled in relation to that claim, the complaint failed to state a claim for which an equitable bill of discovery can be granted. Thus, the Court of Chancery erred when it denied the Trusts motion to dismiss.[59]

IV

Finally, we turn briefly to the alternative question the Manufacturers present in their answering brief:

> In denying Defendants' motion to dismiss, the Court of Chancery asked only whether Plaintiffs had adequately stated a claim for an equitable bill of discovery. In addition to affirming that result, this Court can affirm on the additional ground that Plaintiffs stated a claim for a declaratory judgment. Should it do so?[60]

We answer this question in the negative.

As propounded, the question and its predicate assume that we should not remand to the Court of Chancery for consideration in the first instance of the

---

[58] *DBMP LLC*, 349 A.3d at 697 (quoting *Schoon v. Smith*, 953 A.2d 196, 206 (Del. 2008)).
[59] As with the standing issue, this conclusion renders consideration of the Trusts' waiver argument unnecessary.
[60] Answering Br. at 42.

26

Manufacturers' claim for declaratory relief. That is just as well, given the Court of Chancery's implicit rejection of the Manufacturers' declaratory-relief claim.

The underlying logic of the Court of Chancery's decision denying the Trusts' motion to dismiss and its certification of this interlocutory appeal is that the issuance of an equitable bill of discovery was the only means by which the court could grant the relief sought by the Manufacturers.[61] In the Vice Chancellor's comments appended to the court's order granting the Manufacturers' application for the certification of this interlocutory appeal, he noted:

> Per the penultimate sentence of [Supreme Court] Rule 42(b)(iii), whether to recommend an appeal via certification turns on the trial court's own assessment of the most efficient and just schedule to resolve the case. As the trial judge tasked with offering that assessment, I believe that this case presents sufficiently novel issues of law and a sufficiently specific set of alleged facts that an early assessment from the justices would be optimal. This trial judge would not relish overseeing the case for a year or two, supervising discovery, presiding over a trial, issuing a post-trial decision, and crafting a remedy, only to find out on the appeal from the final order that the justices disagreed with the concept of the Court of Chancery intervening in the first place.[62]

This statement signals to us that the Court of Chancery would view as case dispositive a reversal of its decision that the Manufacturers adequately pleaded an equitable-bill-of-discovery claim. We conclude therefore that a remand for

---

[61] Indeed, the Court of Chancery observed that "[t]his is a case where the court likely will have to use its equitable powers to craft a bespoke remedy, and a simple declaratory judgment cannot do the job." *DBMP LLC*, 349 A.3d at 682.

[62] Order, *DBMP LLC v. Delaware Claims Processing Facility, LLC*, No. 2025-0404 (Del. Ch. Nov. 14, 2025), D.I. 73.

consideration of the Manufacturers' declaratory-judgment claim would be a fruitless exercise for the Manufacturers.

We also decline to affirm on the basis of that claim. The Court of Chancery found the claim so unconvincing that it *sua sponte* raised a long-dormant equitable discovery tool. And in this Court, the Manufacturers have not identified, nor can we put our finger on, a legal theory that would justify the Court's entry of a broad preservation order to facilitate their defense of a multitude of unidentified pending and anticipated claims.

V

In its order certifying this interlocutory appeal, the Court of Chancery posed a question: does this Court "believe that the Court of Chancery should . . . be in the business of potentially issuing relief to preserve documents for use in other litigation . . . [?]"[63] For the reasons set forth above, we answer that the court may exercise its jurisdiction to provide such relief when the party seeking a preservation order as the court described has an interest in discovering the documents, things, or information at issue; those documents, things, or information are material to a specific pending or anticipated claim; and there is no adequate remedy at law. The court may not, however, order such relief as was requested in this case—a broad preservation order constraining third parties—when, as here, the requesting party does not identify a

---

[63] *Id.*

pending or imminent action at law to which the documents are relevant and unavailable through discovery in such action or other legal proceeding.

The judgment of the Court of Chancery is reversed and remanded with direction to enter judgment for the defendants dismissing the action.